IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ANDERSON DIVISION

| | |
|---|---|
| Sharon K. Allen, ) | |
| ) | Civil Action No. 8:04-1605-GRA-BHH |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Jo Anne B. Barnhart, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This case is before the court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended, 42 U.S.C. Section 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security Administration that the plaintiff was not entitled to disability insurance benefits ("DIB") and supplemental security income benefits ("SSI").

**ADMINISTRATIVE PROCEEDINGS**

On November 7, 2000, the plaintiff filed applications for DIB and SSI alleging disability beginning November 30, 1999. The applications were denied initially and on reconsideration. On October 3, 2001, the plaintiff requested a hearing, which was held on

---

[1]A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

December 19, 2002. Following the hearing, at which the plaintiff, her attorney, and a vocational expert appeared, the administrative law judge considered the case *de novo*, and on February 21, 2003, determined that the plaintiff was not entitled to benefits. This determination became the final decision of the Commissioner when it was adopted by the Appeals Council on March 24, 2004.

In making the determination that the plaintiff was not entitled to benefits, the ALJ made the following findings:

> (1) The claimant meets the non-disability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through the date of this decision.
>
> (2) The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
>
> (3) The claimant has a combination of impairments considered to be "severe" based upon the requirements in the Regulations 20 CFR § § 404.1520(b) and 416.920(b).
>
> (4) These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.
>
> (5) The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.
>
> (6) The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments. (20 CFR § § 404.1527 and 416.927).
>
> (7) The claimant has the following residual functional capacity: to lift and carry items weighing 10 pounds frequently and 20 pounds occasionally; to stand and walk at a normal pace for up to 6 hours in an 8-hour workday with the need for a sit-stand option; the ability to engage in detailed, but not complex, work in a low stress, non-production environment; the ability to have frequent contact with the public and co-workers; the ability to handle finger, feel, and reach frequently; never to climb ropes, scaffolds, ladders or to work around hazards; and the ability to climb, balance, stoop, crouch, kneel, and crawl occasionally.

(8) The claimant is unable to perform any of her past relevant work. (20 CFR §§ 404.1565 and 416.965).

(9) The claimant is an "individual closely approaching advanced age." (20 CFR §§ 404.1563 and 416.963).

(10) The claimant has a "high school education." (20 CFR §§ 404.1564 and 416.964).

(11) The claimant has some transferable skills from skilled work previously performed as described in the body of the decision. (20 CFR §§ 404.1568 and 416.968).

(12) The claimant has the residual functional capacity to perform a significant range of light work. (20 CFR § 416.967).

(13) Although the claimant's exertional limitations do not allow her to perform the full range of light work, using Medical-Vocational Rules 202.14 and 202.15 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform. Examples of such jobs include work as a parking lot attendant (DOT #915,473-010 with 650 jobs in South Carolina and 116,000 jobs in the nation); a storage facility clerk (DOT #295.367-016 with 485 jobs in South Carolina and 227,000 jobs in the nation); and a carton packer (DOT #920.665-010 with 11,580 jobs in South Carolina and 575,000 jobs in the nation).

(14) The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision. (20 CFR §§ 404.1520(f) and 416.920(f)).

The only issues before the court are whether the findings of fact are supported by substantial evidence and whether proper legal standards were applied.

## **DISCUSSION**

The plaintiff alleges that (1) the ALJ erred in determining that the plaintiff was not credible; (2) the ALJ erred by discounting the opinion of the plaintiff's treating physician; (3) the ALJ's hypothetical question to the vocational expert was inaccurate and incomplete; and (4) the newly submitted evidence was improperly rejected by the Appeals Council.

The plaintiff was 53 years old at the time of the ALJ's decision, and she has a high school education (Tr. 32) and past relevant work experience as a secretary (Tr. 33). She alleges disability based upon fibromyalgia, arthritis and depression.

***Plaintiff's Credibility***

The plaintiff contends that the ALJ failed to properly evaluate her credibility. The ALJ determined the plaintiff's subjective complaints were not credible to the extent they would prevent her from performing any type pf gainful employment (Tr. 22).

A claimant's allegations of pain, disability and limited function itself, or its severity, need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges she suffers. A claimant's symptoms, including pain, are considered to diminish her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. §§404.1529(c)(4) and 416.929(c)(4). Furthermore, "a formalistic factor by factor recitation of the evidence" is unnecessary as long as the ALJ "sets forth the specific evidence he relies on in evaluating the claimant's credibility." *White v. Massanari*, 271 F.3d 1256, 1261 (10th Cir. 2001).

The ALJ in this case discounted the plaintiff's credibility for three reasons: (1) her daily activities were inconsistent with her complaints of pain and her inability to work; (2) her physicians had not prescribed narcotic medication; and (3) she failed to follow prescribed medical treatment without good reason.

Substantial evidence does not support the credibility determination of the ALJ. The plaintiff was diagnosed with fibromyalgia over 20 years ago. It is clear from the record that she has significant limitations in her activities of daily living. She testified that she has pain in her legs and hips which make walking and sitting difficult (Tr. 34). She also testified

that she has low energy levels, as well as problems with depression, concentration and panic attacks (Tr. 39-40). She testified that her panic attacks leave her feeling dizzy, disoriented, confused and unable to concentrate. The plaintiff also testified that she does some housework, but that her husband has to help her with some tasks, such as carrying loads of laundry. She stated that she can read for only short periods of time because of stress on her neck and shoulders (Tr. 42). The plaintiff also testified that she enjoys making baby quilts, but can only work on them for 15-30 minutes at a time, and that she used to make full-sized quilts but can no longer do so because of stiffness in her hands. She stated that it is "mandatory" that she walk every day, and she tries to do so, but can do it only in increments (Tr. 43-44).

The plaintiff's testimony reveals that she does little more strenuous activities than laundry, with help, cooking meals, quilting and walking. She testified that she cannot do any of these activities for longer than 30 minutes at a time, and they all cause her pain. This recitation reveals that her activities are limited, and supports, rather than weakens, her allegations of disabling pain. Clearly, a claimant is not required to be bedridden or completely helpless in order to be found to be disabled. *Totten v. Califano*, 624 F.2d 10 (4th Cir. 1980). The plaintiff's limited daily activities simply do not contradict her allegations of severe and disabling pain.

The other reasons given by the ALJ for discrediting the plaintiff's testimony as to pain and limitations are similarly inadequate. As discussed below, the failure of the plaintiff's physicians to prescribe narcotic medication is not necessarily indicative of her level of pain. Moreover, it is clear from the medical records that she has tried numerous pain relievers over the years.

Additionally, the ALJ also found that the plaintiff failed to follow through with her treatment, specifically physical therapy. The plaintiff testified that she tried to be compliant with her prescribed treatment but was unable to complete physical therapy

5

because of her pain.  There is evidence in the record to support her contention.  In May 2002, Dr. Gregory Niemer stated in his report that the plaintiff was experiencing daily pain which was severe enough to limit her daily functioning (Tr. 203).  There is no indication in the record from any of the plaintiff's treating or examining physicians that she was a malingerer.

Pain or any other symptom "is recognized as disabling when it is not remediable and precludes a claimant from engaging in any form of substantial gainful activity."  *Cruse v. Bowen*, 867 F.2d 1183, 1186 (8th Cir. 1989).  Here, substantial evidence supports the plaintiff's allegations that her pain is disabling.  The symptoms which the plaintiff testified she experiences are reasonably consistent with the medical evidence and the conditions from which she suffers.  In conclusion, the ALJ erred in failing to consider the plaintiff's allegations of limited function and pain as the allegations are not inconsistent with the medical and other evidence.

### *Opinion of Treating Physician*

The plaintiff argues that the ALJ did not give proper weight to the opinions of her two treating rheumatologists, Dr. Syed Ahmad and Dr. Gregory Niemer.  The opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.  *See* 20 C.F.R. §416.927(d)(20(2002); *Mastro v. Apfel*, 370 F.3d 171 (4th Cir. 2001).  However, statements that a patient is "disabled" or unable to work" or meets the Listing requirements or similar statements are not medical opinions. These are administrative findings reserved for the Commissioner's determination. Social Security Ruling 96-2p.  Furthermore, even if the plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings

must be affirmed if substantial evidence supported the decision. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1974).

The plaintiff has a history of chronic fatigue, fibromyalgia and rheumatic syndrome dating back to the late 1970s, when she was living in West Virginia (Tr. 34; 135-136). Dr. Syed Ahmad, one of her treating physicians in Virginia, summarized her condition and treatment in a letter dated June 24, 1999. Dr. Ahmad stated:

> Reviewing this patient's medical records, lab studies, and documented signs and symptoms, I find to a reasonable degree of medical certainty that she suffers from ATYPICAL RHEUMATIC SYNDROME or a non-specific Auto-immune condition related to silicone mamoplasty in 1976. Her symptoms started in 1977 and over a period of time have progressively gotten worse.
>
> Because of her present condition, the claimant is totally disabled and demonstrates a loss of functional capacity which renders her unable to perform her usual duties of vocation, avocation and self care, or she can perform them only with regular and recurring severe pain.
>
> It is my opinion, based on my findings, review of her medical records, that she is totally disabled and qualifies for compensation under Category A of ATYPICAL RHEUMATIC SYNDROME.

Two other treating physicians, Dr. Thomas Howard and Dr. David McCarron, also diagnosed the plaintiff with fibromyalgia during the period of 1999-2000 (Tr. 160-163; 182-197). In November, 2000, the plaintiff was examined by Dr. Niemer, a rheumatologist in Charleston, upon referral from Dr. McCarron. Dr. Niemer found the plaintiff to have symptoms of fibromyalgia with very poor sleep and profound fatigue (Tr. 237). Dr. Niemer continued to see the plaintiff on a monthly basis (Tr. 227-229). On March 9, 2001, Dr. Niemer noted that the plaintiff would discontinue use of Klonopin because it was causing her to stumble and be uncoordinated (Tr. 226-227). On May 14, 2001, Dr. Niemer found that the plaintiff had pain in her neck, shoulders, and arms, and that her sleep and energy were poor. On October 1, 2001, he noted that the plaintiff had received an injection for pain

in her hip, but that it had not helped her.  On May 15, 2002, Dr. Niemer found that the plaintiff continued to have poor energy, poor sleep and active pain (Tr. 199).

Dr. Niemer completed two medical evaluation forms dated June 18, 2001, and May 9, 2002 (Tr. 219-224; 200-211).  The two evaluations were consistent with each other.  Dr. Niemer noted that the plaintiff met the American Rheumatological criteria for fibromyalgia and that she also had other diagnosed impairments of degenerative disc disease of the cervical spine, migraine headaches, carpal tunnel syndrom and osteoarthritis of the hands (Tr. 201).  Dr. Niemer further noted that the plaintiff continued to have daily pain which was "severe enough to cause limitations in functions" (Tr. 203).  Dr. Niemer noted that the plaintiff was not a malingerer and that her medications caused her to suffer from dizziness and drowsiness (Tr. 204, 205).  Dr. Niemer found that the plaintiff cannot sit, stand or walk for more than two hours at a time; that she cannot lift more than 10 pounds; that she has limitations with reaching, handling and fingering; and that she would miss work more than three times a month as a result of her condition.  He also found the plaintiff to have shortness of breath, headaches, problems climbing stairs, problems with writing and vision, weakness, dizziness, migraine headaches, sleep problems, mood swings, memory impairment and panic attacks (Tr. 205-211).

In a letter dated October 23, 2003, Dr. Niemer states:

I am writing this letter regarding [the plaintiff], whom I follow for chronic fibromyalgia. There seems to be some question regarding Ms. Allen's compliance to medications and her limitations. To my knowledge, she was always compliant with medication regimen. The only times that she didn't take medications were due to medication side effects. She also attempted multiple times to participate in an exercise regimen; unfortunately, these were limited due to the severity of her pain. There was some question as to whether or not her pain was significant since she had not been on narcotic medications. It is my practice, as is the practice of most doctors that take care of fibromyalgia, to not put people on narcotics as they have not been shown to be helpful chronically with pain. Therefore, her not being prescribed narcotic medication has nothing to do with

> the severity of her pain.  It has more to do with the fact that narcotic medicines typically don't help with fibromyalgia pain. As to her limitations, I do not feel that she would be able to perform tasks such as carrying more than 10 lbs. frequently, and standing and walking for up to six hours a day.  She may be able to do this four or five days in a row, but in all likelihood, she would miss greater than five days a month in any job due to the severity of her pain from this chronic disease."

(Tr. 269).[2]

Although the ALJ found that the plaintiff has severe impairments of fibromyalgia, arthritis and depression, he rejected the opinions of Dr. Ahmad and Dr. Niemer, finding that they are "based primarily on the claimant's subjective allegations and are unsupported by objective medical findings, such as MRI studies and x-rays, or either doctor's prescription of narcotic pain medication for the claimant" (Tr. 22-23).  This finding is not supported by substantial evidence in the record.

All the evidence in the record indicates that the plaintiff has fibromyalgia, and her treating physicians have documented the resulting limitations and the affect of this condition on the plaintiff.  Both of these physicians treated the plaintiff over an extensive period of time, and both have opined that the plaintiff is disabled as a result of her limitations.  There is substantial evidence in the record, from these doctors and others who have treated the plaintiff over numerous years, that the plaintiff has chronic conditions which cause her great pain and severely limit her physical capacities.  Nowhere in the record is there any indication that the plaintiff is malingering.  Given her chronic condition and its nature, the lack of narcotic medication is understandable.  However, it is clear from the record that the plaintiff followed her doctors' treatment plans, including the use of a variety of medications, in an attempt to achieve comfort and alleviate her pain.

---

[2] This letter from Dr. Niemer, together with other medical evidence, was submitted to the Appeals Council, which did not address the new evidence in its decision.

9

The medical evidence in this case clearly supports the plaintiff's position that she is unable to work, and there is insubstantial evidence in the record to support the ALJ's conclusion that the plaintiff is not disabled. There is evidence throughout the medical records that the plaintiff's symptoms began in the late 1970s and grew progressively worse over time. Accordingly, there is no substantial evidence to support the ALJ's decision to disregard the opinions of Dr. Ahmad and Dr. Niemer.

If the opinions of the Dr. Ahmad and Dr. Niemer are given controlling weight, as discussed above, the conclusion is inescapable that the plaintiff is disabled. Therefore, rather than remanding this matter to the ALJ for a proper analysis, the court recommends that the decision of the ALJ be reversed and benefits be awarded to the plaintiff. However, in the event that the district court does not adopt this recommendation, this court will briefly address the remaining issues raised by the plaintiff.

*Hypothetical Question*

The plaintiff contends that the hypothetical posed by the ALJ to the vocational expert was improper because it did not include all of the plaintiff's limitations. The plaintiff further argues that the ALJ erred by ignoring the favorable testimony of the vocational expert upon questioning from the plaintiff's attorney. The Fourth Circuit Court of Appeals has held that "[i]n order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of the claimant's impairments." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). The questions, however, need only reflect those impairments that are supported by the record. *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3rd Cir. 1987). The purpose of a vocational expert's testimony is to assist in determining whether jobs exist in the economy which a particular claimant could perform. *Id.* The ALJ, however has great latitude in posing hypothetical questions and is free to

accept or reject suggested restrictions, so long as there is substantial evidence to support the ultimate question. *See Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1986).

As discussed above, the ALJ erred in not giving any weight to the opinions of the treating physicians in this case. Accordingly, he did not include in the hypothetical question any of the limitations described by the physicians. The limitations described by Dr. Niemer would preclude the plaintiff from performing work even at the sedentary level. These limitations were supported by substantial evidence. Accordingly, the ALJ erred in not including them in his hypothetical.

### *New Evidence*

The plaintiff argues that the Appeals Council erred by not articulating in its decision whether it had considered the new medical evidence submitted by the plaintiff after the ALJ's decision. However, as stated by the defendant (and acknowledged by the plaintiff) "in the present case, the reviewing court would still be able to satisfy its statutory function, because this evidence is included in the certified administrative record ... and the reviewing court ultimately determines what constitutes the record for purposed of applying the substantial evidence test under 42 U.S.C. § 405(g)" (def. memo at 16). While this court agrees that the Appeals Council erred,[3] it also finds that the error was harmless in light of the inclusion of the evidence in the record, and in light of the fact that substantial evidence does not support the decision of the ALJ.

### **CONCLUSION AND RECOMMENDATION**

The record does not contain substantial evidence supporting the Commissioner's decision denying benefits under the correct legal standard, and reopening

---

[3]*See Harmon v. Apfel*, 103 F.Supp. 2d 869, 873 (D.S.C. 2000).

the record for more evidence would serve no purpose.  See *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).  Therefore, based upon the foregoing, it is recommended that the Commissioner's decision denying the plaintiff's application be reversed pursuant to sentence four of 42 U.S.C. §405(g) and that the plaintiff be awarded benefits.

                                                s/Bruce H. Hendricks
                                                United States Magistrate Judge

April 11, 2005

Greenville, South Carolina